### NAPOLEON McCAMPBELL v. THE STATE.

No. 3419. Decided February 17, 1915.

**1.—Murder—Continuance — Newly Discovered Evidence — Practice on Appeal.**

Where the judgment was reversed and the cause remanded on other grounds, the overruling of an application for a continuance and a motion for a new trial on the ground of newly discovered evidence need not be considered.

**2.—Same—Manslaughter—Charge of Court—Adequate Cause.**

Where, upon trial of murder, there was no statutory adequate cause and neither of the circumstances isolated and alone would be sufficient to reduce the offense to manslaughter, yet where the facts and circumstances all taken together might be such in the judgment of the jury as to engender in any ordinary man that degree of anger, rage or fear as to render him incapable of cool reflection and would amount to adequate cause, the court should have

submitted the law of manslaughter, and a failure to do so was reversible error. Prendergast, Presiding Judge, dissenting.

### 3.—Same—Manslaughter—Abandonment of Difficulty.

Where, upon trial of murder, the evidence raised the abandonment of the difficulty and the facts were such as to raise the issue of manslaughter, the court should have submitted a charge thereon.

### 4.—Same—Rule Stated—Manslaughter—Charge of Court.

It is the law of this State that if one fires the first shot in self-defense and his adversary flees, if by the conduct of his adversary, defendant's mind is rendered incapable of cool reflection, although not justified in continuing to shoot after the abandonment of the difficulty by his adversary, yet he would be guilty of no higher grade of offense than manslaughter, and the court erred in instructing the jury that as a matter of law defendant would be guilty of murder under such circumstances. Following Mackey v. State, 13 Texas Crim. App., 360.

### 5.—Same—Self-defense—Abandonment of Difficulty.

Where self-defense is presented by the evidence, and the court charges on abandonment of the difficulty, he should in connection therewith charge the jury that if defendant was justified in firing the first shot and continued to shoot after deceased had abandoned the difficulty, if by the previous conduct of the deceased defendant was rendered incapable of cool reflection, etc., he would be guilty of manslaughter, and not murder.

### 6.—Same—Self-defense—Charge of Court—Acts of Another.

Where, upon trial of murder, the evidence raised the issue that another was acting with the deceased in the threatened attack on defendant, the court should have instructed the jury that if from the acts and conduct of deceased and others acting with him, it appeared to the defendant that his life was in danger, etc., to acquit.

### 7.—Same—Charge of Court—Apparent Danger.

Where, upon trial of murder, the evidence raised the issue of apparent danger, the court in his charge should not have limited the defendant's right to act from an actual attack alone.

Appeal from the District Court of Bee. Tried below before the Hon. F. G. Chambliss.

Appeal from a conviction of murder; penalty, fifteen years imprisonment in the penitentiary.

The opinion states the case.

*B. D. Tarlton, Jr.,* and *H. S. Bonham,* for appellant.—On question of another acting with deceased in attacking the defendant: Garcia v. State, 70 Texas Crim. Rep., 485, 156 S. W. Rep., 939; House v. State, 171 S. W. Rep., 206.

On question of apparent danger: Andrus v. State, 73 Texas Crim. Rep., 334, 165 S. W. Rep., 189; Rhea v. State, 67 Texas Crim. Rep., 197, 148 S. W. Rep., 578; Lyons v. State, 71 Texas Crim. Rep., 189, 159 S. W. Rep., 1070; Johnson v. State, 66 Texas Crim. Rep., 586, 138 S. W. Rep., 1021; Castro v. State, 66 Texas Crim. Rep., 282, 146 S. W. Rep., 553.

On question of abandonment of the difficulty: McMahan v. State, 81 S. W. Rep., 296; St. Clair v. State, 92 S. W. Rep., 1095.

On question of manslaughter: Wadlington v. State, 19 Texas Crim. App., 266; Bonner v. State, 29 id., 223; Burnaman v. State, 159 S. W. Rep., 244.

*C. E. Lane,* Assistant Attorney General, for the State.—On question of manslaughter: Miller v. State, 31 Texas Crim. Rep., 609; Hatchell v. State, 47 id., 380; Moffatt v. State, 35 id., 257; Jannings v. State, 132 S. W. Rep., 473; Hardeman v. State, 133 S. W. Rep., 1067; Cole v. State, 35 Texas Crim. Rep., 384; Jay v. State, 52 id., 567.

HARPER, Judge.—Appellant was convicted of murder and his punishment assessed at fifteen years confinement in the penitentiary.

In view of the disposition of the case it is unnecessary to discuss those bills contending that the court erred in overruling his application for a continuance, and in not granting him a new trial on the ground of newly discovered evidence. This evidence will not be newly discovered on another trial, and if appellant desires this testimony he can doubtless secure the attendance of the witness, as well as the witness on account of whose absence a continuance was sought.

The most serious error assigned, in our opinion, is the one wherein appellant complains of the action of the court in refusing to submit the issue of manslaughter, and complaining of that portion of the charge of the court wherein he instructed the jury that if they found that deceased assaulted appellant, and then abandoned the difficulty, and appellant shot him under such circumstances, appellant would be guilty of murder.

The evidence for defendant discloses that deceased took a quirt from a nephew of appellant. The nephew complained to appellant, and appellant went to deceased and demanded the return of the quirt, and when deceased did not promptly return it, appellant jerked it away from him. Appellant retired out of the saloon, and was followed by deceased; that deceased opened his knife and had it in his coat sleeve; words ensued, and appellant contends that deceased cut at him,—appellant's friends cautioning him not to let deceased get close to him as he had a knife. They separated, appellant going to his home, but returning to the business portion of the town later in the evening, and going into Reese's saloon. He says that while he was in there deceased also came in and took a drink and went out the back door; shortly thereafter he also went out the back door, when deceased called him and said, "Come here, pardner"; that he declined to go, when deceased said, "You might as well come on, you son-of-a-bitch, for I am going to kill you anyhow." That he then asked deceased to go on away as he did not desire to have any trouble with him, but deceased kept calling him a son-of-a-bitch, and asking him to come on. That he threatened deceased with arrest, when another Mexican standing by said to deceased, "Why don't you kill the negro?" He says when this remark was made deceased started towards him, placing his hand on

his right-hand hip pocket, when he shot. Appellant in his brief contends that from the testimony offered in his behalf, the jury would have been authorized to draw the following conclusion of fact:

"(a) The fatal collision between defendant and deceased was the sequence of a prior encounter in Reese's saloon in which defendant had taken from the deceased a quirt which belonged to the defendant, but which the deceased had violently taken from Johnnie Roberts, the boy under the charge of the defendant. (b) In connection with this encounter the deceased Mexican attempted to cut the defendant with a drawn knife, calling him a son-of-a-bitch, and threatening to kill him. (c) Subsequently and in a short time after this incident and in the alley west of Reese's saloon, the defendant met deceased, the latter being aided and encouraged by two confederate Mexicans, one of whom advised deceased to kill defendant. (d) The deceased was armed with a knife at the time, as defendant knew. (e) Deceased then called the defendant a son-of-a-bitch, and threatened to kill him, apparently in the act of drawing a knife for that purpose, and as the defendant was turning from the alley into the door of the saloon. (f) The defendant thought one of the Mexican confederates had a pistol. (g) The deceased was 'a victim of tertiary syphilis which superinduces an excited and nervous condition, and was a violent and dangerous man. (h) The defendant was very much excited and scared at the time, and shot automatically and rapidly, under the immediate influence of all these conditions combined."

After carefully reading the record we are inclined to agree with appellant that the testimony offered in his behalf would support such deductions, and would require a charge of manslaughter. While there is no statutory adequate cause in the case, and neither of these circumstances isolated and alone would be sufficient to create that degree of anger, rage or fear that would reduce the offense to manslaughter, yet the facts and circumstances taken altogether might, in the judgment of the jury, be such as to engender in an ordinary man that degree of anger, rage or fear as to render him incapable of cool reflection. It is true that anger alone will not reduce an offense—there must be a cause deemed adequate in law to produce such anger, rage or fear, but very often there is a combination of causes, while no one of them would be sufficient, yet taken as a whole are deemed adequate, and this, in our opinion, is one of those cases where, under all the facts and circumstances in evidence, the issue is raised. Not that the jury would necessarily so find, for the State's theory would make a plain case of murder, and there is testimony in the record to support such finding. The State would have appellant, becoming angry at deceased's conduct, going home to arm himself, returning to town and finding deceased, following him out the back door of the saloon, and then shooting him as he fled. But in passing on whether or not an issue is raised, we must view the testimony in as favorable light to a defendant as the evidence would justify. But if the above facts did not raise the issue of manslaughter,

certainly the court in not submitting that issue in connection with the charge on abandonment of the difficulty was in error. Appellant testifies that deceased told him he had as well come on as he was going to kill him anyway, cursing him; that he then said he was going to have deceased arrested, and turned to go in the house, when another Mexican exclaimed, "Why don't you kill the negro," when deceased threw his hand to his right hip pocket and started towards him; that he had been informed that deceased had an open knife on his person, and he thought he was otherwise armed, and thought the two other Mexicans were there to aid deceased; that acting on this belief he shot and deceased then fled; acting under the excitement engendered he continued to shoot until deceased fell.

It is the law of this State that if one fires the first shot in self-defense, and his adversary flees, if, by the conduct of his adversary, his mind is rendered incapable of cool reflection, although not justified in continuing to shoot after the abandonment of the difficulty by his adversary, yet he would be guilty of no higher grade of offense than manslaughter, and the court erred in instructing the jury that as a matter of law he would be guilty of murder under such circumstances. If the appellant knew that deceased had abandoned the difficulty, and then, while his mind was calm and deliberate, he should continue to shoot, it would be murder. But if one is attacked under circumstances that he would be justified in slaying deceased, even though his adversary subsequently abandoned the difficulty, such conduct would be likely to create that degree of fear or rage which would render him incapable of cool reflection, and if it did do so, the killing under such circumstances would be of no higher grade than manslaughter; and the court erred in, not so instructing the jury. As said in Mackey v. State, 13 Texas Crim. App., 360: "We are to look to the condition of the mind of the defendant at the time of the shooting, and if this was dethroned of reason, he would not be guilty of murder, although the assailant had desisted from the attack and was retreating."

Where self-defense is presented by the evidence with such force as to require a charge thereon, and the court under the evidence feels also called on to charge on abandonment of the difficulty, thus abridging the right of self-defense, he should, in connection therewith, instruct the jury, that if the appellant was justified in firing the first shot or shots, and he continued to shoot after deceased had abandoned the difficulty, and he became aware of that fact, if by the previous conduct of deceased the defendant was rendered incapable of cool reflection, and the mind of defendant was dominated by anger, fear or rage, and while acting under such impulses he shot and killed, he would be guilty of manslaughter. This issue should be submitted to the jury, and the court should not instruct them under such circumstances that the defendant would, as a matter of law, be guilty of murder.

We are inclined to think that the criticism of the court's charge, that it was too restrictive in limiting appellant's right to act from the acts

and conduct of deceased alone, is well taken. At least on another trial, if the evidence raises the issue that the two were acting together, the court will so frame his charge as to present the right to act from the conduct of both or either of them. Appellant testified that another Mexican said to deceased, "Why don't you kill the negro?" and it appeared to him that they were acting together. The court should have instructed the jury, that if it appeared to the defendant from the acts and conduct of deceased, etc., or from the acts and conduct of deceased and others acting with him, that his life was in danger, he would have the right to act in self-defense. On another trial if the testimony is the same, the court in his charge should so instruct the jury.

As appellant's testimony only showed preparation for an attack, and apparent danger, the court in his main charge should not have limited appellant's right to act from an actual attack alone. As the court gave appellant's special charge on this issue, this alone would not present reversible error, but on another trial the court will so frame his charge as to make it applicable to the case as presented by the testimony, and not require the jury to affirmatively find that an actual attack had been made.

We do not deem it necessary to discuss the other questions raised, but on account of the above errors the judgment is reversed and the cause remanded.

*Reversed and remanded.*

PRENDERGAST, PRESIDING JUDGE.—In my opinion the evidence did not raise manslaughter, and the court should not have submitted manslaughter. Johnson v. State, 167 S. W. Rep., 733. I think there is no reversible error in this case, and it should not be reversed, but affirmed. I may write fully later.